Sidney Wayne CAMPBELL, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–16808.

Court of Criminal Appeals of Oklahoma.

Jan. 19, 1972.

Rehearing Denied Feb. 28, 1972.

Frederick L. Boss, Jr., Tulsa County, for plaintiff in error.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., James E. Briscoe, Legal Intern, for defendant in error.

BUSSEY, Presiding Judge:

Sidney Wayne Campbell, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Tulsa County, Oklahoma for the offense of Burglary in the Second Degree, After Former Conviction of a Felony. His punishment was fixed at an indeterminate term of ten (10) to thirty (30) years imprisonment, and from said judgment and

sentence, a timely appeal has been perfected to this Court.

At the trial, Verna Cornelius testified that she was the manager of the Lot-A-Burger Drive-In in Tulsa. On the evening of May 25, 1969, she left the premises at approximately 9:30 p. m. Prior to leaving that evening, she and the other employees wiped down everything. She testified that she had previously known the defendant and did not remember seeing him in the drive-in on the evening in question.

Milo Ache testified that he was employed as the supervisor of maintenance for the Lot-A-Burgers. He testified that he arrived at Lot-A-Burger Number Five at approximately 7:00 o'clock a. m., the morning of May 26, 1969, and found that the back door was ajar. Upon entering the premises, he observed that the safe had been cut open by an acetylene cutting outfit. He called the police, who arrived shortly, and observed them taking pictures and attempting to find fingerprints. He testified that Six Hundred and Five Dollars ($605.00) was missing from the safe.

Officer Lovins testified that he was assigned to the Identification Bureau of the Tulsa Police Department. On the morning of May 26, he assisted in the investigation of a burglary at the Lot-A-Burger. He processed the area around the safe for fingerprints and obtained two latent prints from a stainless steel box above the safe. He testified that the whole area that he processed had been cleaned. There were no other fingerprints on the box.

Officer Nuttles testified that he was assigned to the Identification Division of the Tulsa Police Department. He testified that part of his duties was making comparisons of fingerprints. He testified that he had completed a forty-hour course on fingerprint identification at Oklahoma University sponsored by the Federal Bureau of Investigation. He testified that he personally fingerprinted the defendant when he was arrested. He subsequently made a comparison between the known fingerprint specimen of the defendant and of the latent prints which were introduced into evidence, and was of the opinion that they were identical.

Officer Bales was qualified as an expert witness concerning fingerprint identification. He has previously been employed by the Federal Bureau of Investigation in Washington, D.C. and has attended over four hundred hours of school conducted by the Bureau. He had been employed approximately five years in the Identification Division of the Tulsa Police Department. He testified that he made a comparison between the known fingerprint specimen of the defendant and the two latent prints, and that in his opinion, the same were identical.

The defendant testified that on the evening in question he took Gloria Davis to the Lot-A-Burger to visit her sister, Verna Cornelius. He testified that he remained there approximately one hour, with most of the time spent visiting with Verna Cornelius' husband. He testified that he became thirsty and entered the drive-in to get a drink of water. He was in the general area of the box approximately two or three minutes. He went back outside and resumed his conversation with James Cornelius. He denied returning and burglarizing the drive-in. He testified that it was possible that he may have touched the box where the fingerprint was found while he was in the building. He admitted a prior conviction of a felony in 1944.

James Cornelius testified that he was married to Verna Cornelius, the manager of the Lot-A-Burger. He testified that he knew the defendant and that he remembered the defendant being in the parking lot of the drive-in near closing time. He testified that he remembered talking to the defendant, but did not remember seeing the defendant go inside the building. He testified that he did not know what day or month this occurred. He was "fairly sure that Gloria Davis and her husband were with the defendant."

The State called Brenda Campbell in rebuttal, who testified that she was the de-

fendant's daughter-in-law. She testified that she previously testified in his behalf at the Preliminary Hearing. She testified that the defendant was with her and her husband that night.

■ The first proposition asserts that the trial court committed reversible error by "allowing the jury to consider Plaintiff-in-Error's guilt or innocence for the reason that the State of Oklahoma failed to show and prove beyond a reasonable doubt, as a matter of law, that the Plaintiff-in-Error is guilty of the crime of Second Degree Burglary as alleged." The Court of Criminal Appeals has long recognized the validity of fingerprint identification. In the early case of Stacy v. State, Okl.Cr., 292 P. 885, this Court stated:

" 'We have no doubt but that the finding of the finger prints of the defendant on the door of the vault, with the further proof that defendant did not have access to and had not been at the place burglarized so that the prints could be accounted for upon any hypothesis of his innocence, is a circumstance irresistibly pointing to his guilt . . . '

"The Court further stated in the Syllabus:

" 'The weight and value of the evidence is for the jury, and, where there is evidence showing that the finger prints of accused were found in the place where the crime was committed, under such circumstances that they could have been impressed only at the time of the crime, it may be sufficient to sustain a conviction.' "

We have repeatedly held that where there is competent evidence in the Record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts. Jones v. State, Okl.Cr., 468 P.2d 805.

■ The next proposition contends that the trial court erred in allowing into evidence the known fingerprint specimens obtained after defendant's arrest for the reason that the same were obtained in violation of defendant's constitutional rights. Defendant argues under this proposition that the only evidence connecting the defendant with the commission of the burglary was developed after the information was filed and a warrant was issued for his arrest. We have examined the preliminary information and the warrant and find no legal defect in either instrument. This Court cannot and will not surmise what evidence existed prior to the filing of the information. We have previously held that fingerprinting is not considered within the privilege against self-incrimination. Lester v. State, Okl.Cr., 416 P.2d 52 (1966). We, therefore, find this proposition to be without merit.

■ The final proposition asserts that the trial court erred in admitting evidence of defendant's former conviction in the second stage proceeding, for the reason that the Record does not reflect that the defendant was represented by counsel, or had effectively waived the same, insofar as the previous conviction. We need only to observe that, although the Record does not reflect that the defendant was represented by counsel nor intelligently waived the right to counsel as to the prior conviction as required by Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319, the Attorney General has timely filed a motion to supplement the Record, which reflects that the defendant was, in fact, represented by an attorney as to the former conviction. See Chester v. State, Okl.Cr., 485 P.2d 1065.

In conclusion, we observe that the Record is free of any error which would justify modification or require reversal. The judgment and sentence is, accordingly, affirmed.

BRETT, J., specially concurs.

SIMMS, J., concurs.

BRETT, Judge (specially concurring):

I would modify to ten (10) years, notwithstanding the dictum of Chester v. State; the appeal is on the Record and I believe it is improper to allow the State to add to the Record without following proper procedures.